IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANQUITA MOORE, ) | |
| PLAINTIFF, ) | |
| V. ) | CASE NO.: |
| HELZBERG DIAMONDS LLC, ) | |
| DEFENDANT(S). ) | PLAINTIFF DEMANDS TRIAL |
| ) | BY STRUCK JURY |

**COMPLAINT FOR DAMAGES**

# JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII) and 29 U.S.C. §2601 et seq, the "Family and Medical Leave Act."

3. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

5. Plaintiff, Sanquita Moore, ("Plaintiff" or "Moore") is a resident of Hiram, Georgia and performed work for the Defendant in the counties composing the Northern District of Georgia during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

6. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

7. Defendant Helzberg Diamond Shops, Inc. ("Defendant") is a company registered and doing business in the State of Georgia and has sufficient minimum contacts with the State of Georgia that it is subject to service of process in Georgia.

8. Defendant employed at least fifteen (15) people during the current or preceding calendar year.

9. Defendant employed at least 500 people during the current or preceding calendar year.

10. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

11. During the three years preceding filing this Complaint, Defendant was an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

12. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

13. Plaintiff worked more than 1250 hours in the 12 months preceding her request for FMLA leave.

14. During the three years preceding filing this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

15. Defendant's gross annual revenue exceeds $500,000.

16. Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

**FACTS**

17. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

18. Plaintiff began her employment with defendant on or about October 21, 2019, as a Manager in Waiting at the Defendant's Cumberland Mall location in Atlanta, Georgia.

19. Approximately 90 days later, Plaintiff was promoted to the permanent position of Manager at the Cumberland Mall location.

20. Under Plaintiff's management, the store's performance improved significantly within six months, earning her the "Rookie Manager of the Year" award.

21. Plaintiff received no disciplinary actions and positive reviews from her former manager, Sindy Ross.

22. In her position, Plaintiff worked until closing two nights per week.

23. In June 2020, Sindy Ross was replaced by Kerry Rondinelli as Plaintiff's supervisor.

24. Plaintiff, being one of only two Black managers under Rondinelli's supervision, was subjected to different and discriminatory treatment by Rondinelli from the outset.

25. Defendant maintains a progressive discipline policy which requires notifying employees of policies before holding them accountable.

26. Shortly after Rondinelli became Plaintiff's supervisor, Plaintiff was written up for not scanning identifications for purchases over $1,000 as per Defendant's loss prevention policy.

27. Neither Plaintiff nor her staff were informed of this policy or provided with the necessary training prior to the write-up.

28. Non-Black employees were trained on policies before being held accountable for them.

29. Even though Plaintiff led the district in sales for two years, she was held to a higher standard than her white counterparts.

30. Rondinelli did not praise Plaintiff's performance but was open with her praise for white employees who were not performing as well.

31. In March of 2022, Plaintiff became pregnant.

32. In September of 2022, Plaintiff applied for FMLA for her pregnancy.

33. After she applied for FMLA, Rondinelli called members of Plaintiff's staff and solicited negative feedback about Plaintiff from them.

34. Plaintiff asked Rondinelli if she had been calling staff to solicit negative feedback about her.

35. In response, Rondinelli became angry, cursed at Plaintiff, and eventually hung up the phone on her.

36. Plaintiff had her baby in November and returned to work in January of 2023.

37. When Plaintiff returned to work, she continued to work until closing for two nights a week, as she had done since she started working for Defendant.

38. In October of 2023, Plaintiff's daughter became ill with a double ear infection.

39. As a result, Plaintiff had to miss a meeting at work.

40. After Plaintiff missed the meeting, Rondinelli wrote her up.

41. Other employees who were not black, including Plaintiff's white coworker Sonila Terri, missed meetings and were not disciplined.

42. At the end of March of 2024, Rondinelli held a meeting with Plaintiff.

43. Rondinelli told Plaintiff in that meeting that she was now required to close three nights a week, and Sundays did not count.

44. Company policy, however, only required that managers work closing shifts two nights a week.

45. The policy also did not specify which nights.

46. In addition, company policy did not require that the store manager be the last to leave if there was a "key holder" (an employee who was also qualified to close the store.)

47. Despite this, Rondinelli told Plaintiff that she would have to be the last employee to leave the store on these nights.

48. Rondinelli told Plaintiff that she could either work the mandatory schedule or resign.

49. Plaintiff told Rondinelli that she could not work the schedule and that she was being treated differently than her peers.

50. In fact, Rondinelli regularly approved and reviewed schedules where managers were not scheduled to close for three nights a week.

51. Rondinelli similarly did not require those managers to be the last person to leave on each night.

52. These managers that were treated differently than Plaintiff were either (1) not black, (2) not women, or (3) had not requested FMLA leave.

53. Plaintiff was constructively discharged at the end of March 2024.

## COUNT I TITLE VII - RACE DISCHARGE

54. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

55. Plaintiff is a person of African ancestry colloquially known as black or African American.

56. Plaintiff was qualified for the position of manager.

57. Defendant's employee, Kerry Rondinelli, terminated Plaintiff's employment on or about March 27, 2024.

58. Sonila Terri, engaged in the same or similar conduct but remained employed.

59. Sonila Terri is a person of Caucasian ancestry.

60. Defendant's actions in terminating Plaintiff's employment violated Title VII.

61. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

62. Defendant did not terminate Sonila Terri for the same or similar conduct.

63. Defendant's Race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

64. Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

65. Defendant's actions in terminating Plaintiff violated Title VII.

## COUNT II 42 U. S. C. § 1981 DISCHARGE

66. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

67. Plaintiff is a person of African ancestry colloquially known as black or African American.

68. Plaintiff was qualified for the position of manager.

69. On or about March 27, 2024, Defendant terminated Plaintiff's employment.

70. Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

71. Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

72. Defendant's decision to terminate Plaintiff's employment was made, in whole or part, because of her race in violation of 42 U. S. C. § 1981.

73. Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III TITLE VII – SEX- DISCHARGE

74. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

75. Plaintiff is Female.

76. Plaintiff was qualified for the manager position.

77. Defendant's employee, Kerry Rondinelli, terminated Plaintiff's employment on or about March 27, 2024.

78. Defendant's actions in terminating Plaintiff's employment violated Title VII.

79. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

80. Defendant did not terminate for the same or similar conduct.

81. Plaintiff's sex was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

82. Because of Defendant's discriminatory decision made in whole or in part because of sex, Plaintiff has lost pay and continues to be paid less.

83. Defendant's actions in terminating Plaintiff violated Title VII.

## COUNT IV –FMLA—INTERFERENCE

84. Plaintiff incorporates by reference each and every preceding paragraph as if fully set forth herein.

85. At all relevant times, Defendant was an "employer" engaged in interstate commerce within the meaning of the FMLA, 29 U.S.C. § 2601 et seq.

86. Plaintiff was, at all relevant times, an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2).

87. In September 2022, Plaintiff applied for and was granted FMLA leave for her pregnancy, in accordance with 29 U.S.C. § 2612(a)(1).

88. Plaintiff exercised her right to take leave under the FMLA for the serious health condition of pregnancy and childbirth.

89. Plaintiff's request for and use of FMLA leave were protected activities under the FMLA.

90. Defendant unlawfully interfered with Plaintiff's rights under the FMLA by:

    a. Retaliating against Plaintiff following her FMLA leave request by attempting to solicit negative feedback from her staff.

    b. Assigning Plaintiff a more demanding and burdensome schedule upon her return from FMLA leave, which included being required to work three-night shifts per week and Sundays, contrary to company policy which required managers to work closing shifts only two nights a week without specifying which nights.

    c. Writing up Plaintiff for missing a meeting due to her daughter's illness, despite other non-Black employees not being disciplined for similar attendance issues.

    d. Telling Plaintiff to work the mandatory schedule or resign without considering the hardship it posed.

91. As a direct and proximate result of Defendant's willful interference with Plaintiff's FMLA rights, Plaintiff has suffered significant damages, including but not limited to, loss of employment, loss of income, and emotional distress.

## COUNT V – FMLA—RETALIATION

92. Plaintiff incorporates by reference each and every preceding paragraph as if fully set forth herein.

93. At all relevant times, Defendant was an "employer" engaged in interstate commerce within the meaning of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.

94. At all relevant times, Plaintiff was an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2).

95. In September 2022, Plaintiff applied for and was granted FMLA leave for her pregnancy, in accordance with 29 U.S.C. § 2612(a)(1).

96. Plaintiff exercised her right to take leave under the FMLA for the serious health condition of pregnancy and childbirth.

97. Plaintiff's request for and use of FMLA leave were protected activities under the FMLA.

98. Defendant unlawfully interfered with Plaintiff's rights under the FMLA by retaliating against her following her FMLA leave request and use.

99. Specifically, Defendant's retaliatory actions included, but were not limited to, the following:

    a. Soliciting negative feedback about Plaintiff from her staff while she was on FMLA leave.

    b. Assigning Plaintiff a more demanding and burdensome work schedule upon her return from FMLA leave, which included requiring her to work three night shifts per week and Sundays, contrary to company policy requiring managers to work closing shifts only twice a week without specifying the nights.

    c. Disciplining Plaintiff for missing a meeting due to her daughter's illness, despite not disciplining employees who had not requested FMLA for similar attendance issues.

    d. Telling Plaintiff to work the mandatory schedule or resign, without considering the undue hardship it posed.

100. Defendant's actions directly and proximately caused significant damages to Plaintiff, including but not limited to, loss of employment, loss of income, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964.

      B.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the FMLA;

      C.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of 42 U.S.C § 1981;

      D.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

      E.    Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

      F.    Attorneys' fees and costs;

      G.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

      H.    Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

*/s Kira Fonteneau*

Kira Fonteneau
Georgia Bar No. 103355
Kate Cantolina
Georgia Bar No. 794526

**OF COUNSEL:**

The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
fonteneau@theworkersfirm.com
kate@theworkersfirm.com